JOHN A. CARRIER, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 95–05–00706

(Dated February 13, 1996)

*John A. Carrier, pro se,* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(John J. Mahon),* Senoria K. Clarke, Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

## OPINION

RESTANI, *Judge:* This matter is before the court on a motion for judgment upon the agency record by plaintiff John A. Carrier ("Carrier"). Carrier challenges a decision of the Deputy Assistant Secretary (Regulatory, Tariff and Trade Enforcement) of the Department of the Treasury (or "Treasury") affirming Customs' denial of credit for his responses to three questions on the October 1994 Customs broker examination.

BACKGROUND

On October 3, 1994, Carrier sat for the Customs broker examination for the purpose of obtaining a Customs broker license. Carrier received a score of 73, two points below the passing score.[1] He appealed his grade on December 12, 1994, by petition to Customs, challenging Customs' grading of questions 47, 77, 96, and 98. Customs notified Carrier on March 1, 1995, that his appeal as to question 77[2] only had been granted and his grade had been raised to 74.

By letter of March 8, 1995 and supplementary letter of April 20, 1995, Carrier petitioned Treasury for review of questions 47, 96, and 98. In response, Treasury determined that Carrier's answers to questions 47, 96, and 98 were incorrect and denied Carrier's petition by letter on May 5, 1995. Suit in this court subsequently followed.

STANDARD OF REVIEW

In accordance with the standard of review set forth in 19 U.S.C. § 1641(e)(3) (1994), a final administrative decision by the Secretary of the Treasury denying a Customs broker's license will be set aside if it is not supported by substantial evidence. *Rudloff v. United States,* Slip Op. 95–167, at 3, (Oct. 3, 1995); *see also Bell v. United States,* 17 CIT 1220, 1223, 839 F. Supp. 874, 877 (1993).

DISCUSSION

Pursuant to 19 U.S.C. § 1641(b)(2) (1994), Treasury may require that a customs broker's license applicant

show any facts deemed necessary to establish that the applicant is * * * qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, the Secretary may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

As a general matter, an administrative determination as to the appropriateness of various questions and answers on the Customs broker examination, will be accorded some deference by the court. *DiIorio v. United States,* 14 CIT 746, 747 (1990) (noting that judicial intrusion into agency's "formulation and grading of standardized examination questions should be limited in scope"). With this in mind, the court turns to plaintiff's challenge of questions 47, 96, and 98.

Question 47 requires the examinee to assess the correctness of a claim for liquidated damages in a specific factual situation. The question reads as follows:

On April 20, 1994, XYZ Corporation obtains release of a shipment of widgets valued at $25,000. Duties, fees and taxes of $2,500 are due

---

[1] A passing score on the October 3, 1994 Customs broker examination was 75. *See* 19 C.F.R. § 111.13(e) (1994).

[2] Customs' letter erroneously granted credit for question 73, rather than 77, a matter which Carrier corrected by telephone and by his own handwritten correction to the letter. The letter, as corrected, was accepted by the Secretary of the Treasury as correct, upon appeal of the matter to Treasury.

on the shipment. The import specialist views a sample of the widgets and decides that they are not properly marked with the country of origin. On April 30, 1994, he issues a Notice of Marking to the XYZ Corporation, informing them that the merchandise must be marked and certified within 30 days. XYZ Corporation never responds. The import specialist issues a claim for liquidated damages in the amount of $27,500. His action is:

> A. Correct.
> B. Incorrect. The claim should be issued for $25,000, an [amount] equal to the value of the merchandise.
> C. Incorrect. The claim should be issued for $5,000, an amount equal to double the duties.
> D. Incorrect. No liquidated damages should be assessed, but the entry should be liquidated with marking duties.
> E. Incorrect. The claim should be issued for $2500 to account for the 10% duty for failure to mark.

Admin. R. at 43. Customs accepted either A or B as the correct answer. According to defendant, after drafting question 47 and its answers and including it on the examination, "Customs recognized an ambiguity which could not be resolved in the context of a multiple choice examination." Def.'s Opp'n Pl.'s Mot. J. Upon Agency R. at 3. Defendant states that two Customs regulations address the factual scenario presented in question 47, namely, 19 C.F.R. § 134.54(a),[3] which supports answer A, and 19 C.F.R. § 141.113(g),[4] which supports answer B.[5] Given the time constraints of the examination, defendant reasons that an examinee would most likely choose the answer which arguably matched the applicable regulation first located and not search further. In an effort to resolve this possible problem, defendant contends Customs granted credit for both answers A and B.

Plaintiff, however, chose answer C as his response for question 47. Plaintiff contends that given the instructions on the examination, which state that "[f]or each question, select the BEST answer from the 5 answers provided," a question with more than one "best" answer is unreasonable and should be voided. Pl.'s Resp. Def.'s Opp'n at 6–7. After having researched both 19 C.F.R. §§ 141.113(g) and 134.54(a), plaintiff claims he chose answer C believing some explanation existed

---

[3] That section provides in relevant part:

*Demand for liquidated damages.* If within 30 days from the date of the notice of redelivery * * * the importer does not properly mark or redeliver all merchandise previously released to him, the district director shall demand payment of liquidated damages incurred under the bond in an *amount equal to the entered value of the articles not properly marked or redelivered, plus any estimated duty thereon as determined at the time of entry.*

19 C.F.R. § 134.54(a) (1994) (emphasis added).

[4] That section provides in relevant part:

*Demand not complied with.* When the demand of the district director for return of merchandise to Customs custody is not complied with, liquidated damages shall be assessed, * * * *in an amount equal to the value of the merchandise* not returned * * * as determined at the time of entry. * * *

19 C.F.R. § 141.113(g) (1994) (emphasis added).

[5] Defendant also points out that 19 C.F.R. § 113.62(k) (1994) relates to the factual situation posed in question 47. That section provides in relevant part:

*Consequence of default.* (1) If the principal defaults on agreements in this condition * * * the obligors agree to pay liquidated damages *equal to the value of the merchandise* involved in the default * * * *or such other amount as may be authorized by law or regulation.* * * *

*Id.* (emphasis added).

for the two contradictory, but seemingly correct, answers that was not readily apparent to him. As support could be found for both A and B in Customs' regulations, plaintiff argues neither answer could be correct.

Plaintiff indicates that Customs has frequently either voided a question or granted credit for two answers to a single question on past exams.[6] Given the underlying instruction that only one answer is "best" and considering the record as a whole, the court finds that Customs' procedures for remedying this type of faulty question, and faulty questions in general, are unclear from the record. Customs' procedures for disposition of defective questions, e.g. when Customs will void a question, what the result will be if a question is voided, and when Customs will grant credit for two answers to a question, are unknown to the court.[7] Accordingly, the court finds Customs' denial of credit for plaintiff's answer to question 47 is not adequately explained.

Question 96 requires an examinee to choose the permissible manner of marking firewood from Brazil packaged in polyethylene bags from Taiwan. The question reads as follows:

> ABC Inc. imports firewood from Brazil in polyethylene bags. The origin of the firewood is Brazilian but the bags (in which the firewood is contained at the time of importation) are products of Taiwan. The firewood is to be sold at retail in the polyethylene bags. Which is true?
>
> A. Neither the firewood nor the polyethylene bags are required to be marked with their country of origin.
> B. The polyethylene bags are excepted from country of origin marking. The bags should be marked "Firewood, Product of Brazil".
> C. The firewood is excepted from marking. The bags should be marked "Taiwan".
> D. Neither the firewood nor the bags are excepted from marking. The bags must be marked "Firewood Product of Brazil; Bag Made in Taiwan".
> E. None of the above.

---

[6] On the April 5, 1993 exam, Customs voided questions 83, 90, and 96, and granted credit for two answers to question 37. Pl.'s Resp. Def.'s Opp'n, Attach., at 1–2. On the October 4, 1993 exam, Customs granted credit for two answers to questions 24 and 87. *Id.* at 3–4. On the April 4, 1994 exam, Customs voided questions 35, 80, and 81, and granted credit for two answers to question 99. *Id.* at 5–6. On the October 3, 1994 exam, Customs voided question 61 and granted credit for two answers to questions 47, 53, and 77. *Id.* at 7–8. On the April 3, 1995 exam, Customs did not void any question or grant credit for two answers to any question. *Id.* at 9–10.

[7] The court notes that the selected exams plaintiff presented contain what appear to be a relatively large percentage of faulty questions. If these exams are representative, it would suggest that more exam proofing may be needed. In any case, clear procedures for disposition of faulty questions should be established, if they do not exist.

Admin. R. at 44. Customs selected B as the correct answer and cites 19 C.F.R. §§ 134.24[8] and 134.33 (1994)[9] as support for that answer. At first glance, answer B would appear to provide the "best" answer, but previous exams have created a context which muddies the water.

Plaintiff argues that answer B imposes additional requirements beyond those dictated by either 19 C.F.R. §§ 134.24 or 134.33. Plaintiff argues that answer B requires that the bags be marked with 1) the contents of the container, 2) words indicating manufacture such as "Product of," and 3) country of origin. Plaintiff contrasts answer B with the correct answer to a similar question given on the April 1994 test. Question 91 of that test reads as follows:

> Jones, Inc. imports sewing needles that are made in Taiwan. Due to their size, the needles cannot be indelibly marked. Attaching a tag to each needle is possible but economically prohibitive. The sewing needles are imported in disposable plastic boxes, made in Japan, for retail sale. Which is true?
>
> > A. Neither the needles nor the boxes are required to be marked with their country of origin.
> > B. The needles are excepted from marking. The box should be marked "TAIWAN."
> > C. The needles are excepted from marking. The box should be marked "JAPAN."
> > D. The box must be marked "Needles Made in Taiwan; Box Made in Japan."
> > E. None of the above.

Pl.'s Resp. Def.'s Opp'n at 10. The correct answer was B and Customs cited 19 C.F.R. §§ 134.22(a)[10] and 134.32(a) (1994)[11] as its support. *Id.* Carrier contends that answer B complies with the above cited regulations and with the regulations cited for question 96 on the October 1994 exam. Plaintiff further claims that he sat for the April 1994 exam and

---

[8] That section provides in relevant part:

    (a) *Containers ordinarily discarded after use.* Disposable containers or holders subject to the provisions of this section are the usual ordinary types of containers or holders, including * * * *polyethylene bags* * * * which are ordinarily discarded after the contents have been consumed.

    \*        \*        \*        \*        \*        \*        \*

    (d) *Imported full*—(1) *When contents are excepted from marking.* Usual disposable containers in use as such at the time of importation shall not be required to be marked to show the country of their own origin, but *shall be marked to indicate the origin of their contents* regardless of the fact that the contents are excepted from marking requirements;. * * *

19 C.F.R. § 134.24 (emphasis added).

[9] That section provides in relevant part:

    Articles of a class or kind listed below are excepted from the requirements of country of origin marking. * * * However, in the case of *any article described in this list which is imported in a container, the outermost container in which the article ordinarily reaches the ultimate purchaser is required to be marked to indicate the origin of its contents.* * * *

19 C.F.R. § 134.33 (emphasis added). Firewood is one of the products listed in section 134.33. *Id.*

[10] That section provides:

*Contents excepted from marking.* When an article is excepted from the marking requirements by subpart D of this part, *the outermost container or holder in which the article ordinarily reaches the ultimate purchaser shall be marked to indicate the country of origin of the article* whether or not the article is marked to indicate its country of origin.

19 C.F.R. § 134.22(a) (emphasis added). Section 134.32 of subpart D lists the general exceptions to marking requirements.

[11] That section provides in relevant part: "The articles described or meeting the specified conditions set forth below are excepted from marking requirements * * * : (a) *Articles that are incapable of being marked;.* * * *" 19 C.F.R. § 134.32 (emphasis added).

answered question 91 correctly. Carrier argues that he chose answer E for question 96 on the October exam because answer B to that question included the contents of the container and the phrase "Product of," which are not required by regulation.

The court notes that the regulations cited by Customs for both question 91 of the April 1994 exam and question 96 of the October 1994 exam require only that the outside container be marked with the country of origin of its contents. The contents within the containers need not be marked and words such as "Made in" or "Product of" are not required by 19 C.F.R. §§ 134.24 or 134.33. While it is not error to so mark them, the answer suggests compulsion. Accordingly, the court holds that given the totality of the circumstances, including prior exam history, answer B to question 96 cannot be considered more correct than answer A, which states that "[n]either the firewood nor the polyethylene bags are required to be marked with *their* [sic] country of origin," (emphasis added) or answer E, "None of the above." Because of faulty drafting, plaintiff's answer must be considered correct or the question must be voided.

Lastly, plaintiff challenges the correct answer to question 98 which requires an examinee to evaluate a particular country of origin marking. The question reads as follows:

> Jones Company imports calendars manufactured in Great Britain. The cover of the calendars are conspicuously marked "Gt. Britain" in ⅛ inch lettering. The words "U.S.A. edition" appear directly below the words "Gt. Britain" in ½ inch lettering. Which statement is correct?
>
> A. The calendars are not legally marked because the country of origin marking "Gt[.] Britain" is not preceded by the words "Made in" or similar words and is not in comparable size lettering to "U.S.A. edition."
> B. The calendars are legally marked.
> C. The calendars are not legally marked because the country of origin marking "Gt[.] Britain" is not preceded by the words "Made in" or similar words.
> D. The calendars are not legally marked because the origin marking "Gt. Britain" is not an acceptable country of origin marking.
> E. The calendars are not legally marked because the origin marking "Gt. Britain" is not an acceptable country of origin marking and is not preceded by the words "Made in" or similar words and is not in a comparable size lettering to "U.S.A. edition."

Admin. R. at 45. Customs selected A as the correct answer and cited 19 C.F.R. §§ 134.45(b)[12] and 134.46[13] as authority for that answer. Defendant asserts that the calendars in question 98 were not legally marked because 1) the calendars lacked the words "Made in," "Product of," or similar words in close proximity to the country of origin and 2) the type size of "U.S.A. edition" is larger than that of "Gt. Britain," thereby failing to meet the requirement that the words be "of at least comparable size."

Carrier, however, chose answer C, and argues that the determination of whether certain words are of comparable size is subjective and not suitable matter for a Customs broker examination question. Plaintiff cites question 60 from the April 3, 1995 examination which involved a country of origin marking in ¼ inch lettering and a trademark in ½ inch lettering. Although Carrier concedes that the question involved a trademark (which was not at issue in question 98), he contends that 19 C.F.R. § 134.46 also applies to question 60 of the April 1994 exam and yet, the correct answer for question 60 did not mention a disparity between the lettering sizes of the trademark and the country of origin marking.

The court finds that the correct answer selected by defendant is supported by substantial evidence. The court rejects plaintiff's arguments that the visual impact of the lettering of the words in the question must be considered on a subjective basis. Question 98 clearly stated that the lettering of "U.S.A. edition" and "Gt. Britain" were of markedly different sizes. This is ample clarification. Furthermore, the court finds that a question from a later examination dealing with trademarks and a smaller lettering size difference does not have any bearing on the proper answer to question 98. Accordingly, the court upholds Treasury's decision as to question 98.

This matter is remanded to address question 47 and to give appropriate treatment to question 96. If adjustment to question 96 results in a passing grade, question 47 need not be addressed.

---

[12] That section provides in relevant part: *"Abbreviations and variant spellings.* Abbreviations which unmistakably indicate the name of a country, such as 'Gt. Britain' for 'Great Britain' * * * are acceptable. * * *" 19 C.F.R. § 134.45(b).

[13] That section provides in relevant part:

In any case in which * * * the letters 'U.S.A.' * * * appear on an imported article or its container, there shall appear, legibly and permanently, in close proximity to such words, letters or name, and *in at least a comparable size, the name of the country of origin preceded by 'Made in,' 'Product of,' or other words of similar meaning.*

19 C.F.R. § 134.46 (emphasis added).